**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

WARREN PHOTOGRAPHIC LIMITED,

Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE “A”,

Defendants.

Case No.: 1:26-cv-11576

Judge Thomas M. Durkin

Magistrate Judge M. David Weisman

**MEMORANDUM IN SUPPORT OF PLAINTIFF’S RENEWED MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff, Warren Photographic Limited (“Warren Photographic” or “Plaintiff”), submits this Memorandum in support of Plaintiff’s Renewed Motion for a Preliminary Injunction (the “Motion”).

## TABLE OF CONTENTS


**I. INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1**
**II. STATEMENT OF FACTS ........ 4**
A. PLAINTIFF'S COPYRIGHT AND PRODUCTS ........ 4
B. DEFENDANTS' UNLAWFUL ACTIVITIES ........ 4
*i. Defendants Operate Legitimate-Looking Internet Stores ........ 4*
ii. Defendants Use Fictitious Aliases and Common Tactics to Evade Take Down ........ 5
**III. ARGUMENT ........ 6**
A. THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS ........ 7
B. STANDARD FOR PRELIMINARY INJUNCTION ........ 9
C. PLAINTIFF WILL LIKELY SUCCEED ON THE MERITS ........ 9
D. THERE IS NO ADEQUATE REMEDY AT LAW AND PLAINTIFF WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF ........ 10
E. THE BALANCING OF HARMS TIPS IN PLAINTIFF'S FAVOR ........ 12
F. ISSUANCE OF THE INJUNCTION IS IN THE PUBLIC INTEREST ........ 13
**IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ........ 14**
A. A PRELIMINARY INJUNCTION IMMEDIATELY ENJOINING DEFENDANTS' UNAUTHORIZED AND UNLAWFUL USE OF PLAINTIFF'S WORK IS APPROPRIATE ........ 14
B. PREVENTING THE FRAUDULENT TRANSFER OF ASSETS IS APPROPRIATE ........ 15
**V. DEFENDANTS RECEIVED NOTICE OF THIS CASE AND THE PRELIMINARY INJUNCTION VIA E-MAIL ........ 18**
**VI. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........ 20**
**VII. CONCLUSION ........ 20**

## TABLE OF AUTHORITIES

Cases

*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992) .......... 9

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007) .......... 16

*Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 21 C 3289, 2022 WL 17176498 (N.D. Ill. Nov. 23, 2022) .......... 11

*Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3d Cir. 1983) .......... 13

*Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444 (N.D. Ill. Sept. 5, 2018) .......... 17

*Burger King Corp. v. Majeed*, 805 F. Supp. 994 (S.D. Fla. 1992) .......... 13

*Christian Dior Couture, S.A. v. Liu*, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015) .......... 9

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075 (N.D. Ill. 1996) .......... 7

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) .......... 16

*Curry v. Revolution Labs., LLC*, 949 F.3d 385 (7th Cir. 2020) .......... 8

*Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940) .......... 16

*Diachenko v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 24-cv-05936 (N.D. Ill. 2024) .......... 2, 15, 16, 19

*Dyson Tech. Ltd. v. David 7 Store*, 132 F.4th 526 (7th Cir. 2025) .......... 17

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000) .......... 9

*Foodcomm Int'l v. Barry*, 328 F.3d 300 (7th Cir. 2003) .......... 12

*GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828 (N.D. Ill. 2019) .......... 11, 12

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999) .......... 16

*H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827 (7th Cir. 2012) .......... 19

*Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325 (7th Cir. 1977) .......... 10

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999) .......... 20

*In re Vuitton et Fils S.A.*, 606 F.2d 1 (2d Cir. 1979)........................................................................ 2

*Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir. 1988).......................... 10

*JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910 (7th Cir. 2007)........................................................ 10

*Jodicke v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 24-cv-07859 (N.D. Ill. 2024) ........................................................................................................ 2, 15, 16, 19

*Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, No. 20-cv-3471, 2020 WL 8260381 (N.D. Ill. July 20, 2020)................................................................................................ 18

*Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 793 (7th Cir. 2026)................ 2

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585 (D.D.C. 1994) ........................................ 13

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982 (11th Cir. 1995) ......................... 15, 16

*Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531 (7th Cir. 2021) ..................................................... 11

*Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, No. 03 C 4844, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005).......................................................................................... 16

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007)....... 12

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203 (1942) .......................... 17

*Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897 (N.D. Ill. 2015) ............................... 9, 18, 20

*Mori Lee v. Liu*, No. 19-cv-07555 (N.D. Ill. May 14, 2020)............................................................... 8

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ..................................................... 19

*NBA Props., Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022) ............................................................ 8

*Processed Plastic Co. v. Warner Commc'ns, Inc.*, 675 F.2d 852 (7th Cir. 1982)............................. 10

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003)........................... 8

*Rathmann Grp. v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989)........................................................... 20

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521 (S.D. Cal. 1990), *aff'd*, 970 F.2d 552 (9th Cir. 1992)................................................................................................................ 15, 16

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) .......... 11

*SEC v. Lauer*, 52 F.3d 667 (7th Cir. 1995) .......... 15

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390 (1940) .......... 17

*Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914 (7th Cir. 1950) .......... 13

*Teledyne Techs. Inc. v. Shekar*, 739 F. App'x 347 (7th Cir. 2018) .......... 19

*Tommy Hilfiger Licensing LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 1:20-cv-07477 (N.D. Ill. Mar. 24, 2021) .......... 8

*Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891 (7th Cir. 2001) .......... 9, 12

*uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421 (7th Cir. 2010) .......... 8

*Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003 (C.D. Cal. 2011) .......... 12, 13

Statutes

17 U.S.C. § 101 .......... 10

17 U.S.C. § 501 .......... 9

17 U.S.C. § 504(b) .......... 3, 15, 17, 18

17 U.S.C. §§ 101 et seq. .......... 7

28 U.S.C. § 1331 .......... 7

28 U.S.C. § 1338(a)–(b) .......... 7

28 U.S.C. § 1391 .......... 7

735 Ill. Comp. Stat. 5/2-209(a)(2) .......... 8

Rules

Fed. R. Civ. P. 65(a) .......... 19

Fed. R. Civ. P. 65(a)(1) .......... 6, 14

Fed. R. Civ. P. 65(c) .......... 20

Fed. R. Civ. P. 65(d)(2)(C) .......... 3, 14

Other Authorities

Fed. R. Civ. P. 4.1 advisory committee's note to 1993 amendment.......... 19

# MEMORANDUM OF LAW

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff brings this action against the defendants identified on Schedule A to the Amended Complaint (collectively, the "Defendants") for Copyright Infringement (Count I). As alleged in the Amended Complaint, Defendants are selling unauthorized products that are direct copies or derivative works of the copyrighted subject matter of Plaintiff's registered Copyrighted Work, hereinafter referred to as the "Warren Photographic Products." Also, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling infringing Warren Photographic Products through various fully interactive commercial internet websites identified in Schedule A to the Amended Complaint (collectively, the "Defendant Internet Stores"). Defendants' unauthorized conduct is done with the intent to generate profits by infringing and trading off Plaintiff's valuable rights.

The Defendants create numerous Defendant Internet Stores and design them to appear to be selling authorized products, while actually selling unauthorized and unlicensed Warren Photographic Products to unknowing consumers. Plaintiff has filed this action to combat Defendants' infringement of Plaintiff's registered copyright, as well as to protect unknowing consumers from purchasing pirated Warren Photographic Products over the internet.

This Court has personal jurisdiction over Defendants because each Defendant targets Illinois residents and has displayed, offered to sell, sold, and continues to sell pirated Warren Photographic Products to consumers within the United States, including the State of Illinois. Specifically, Defendants reach out to do business with Illinois residents by operating one or more commercial, interactive internet stores through which Illinois residents can and do purchase products being sold in connection with Plaintiff's Warren Photographic Work. Defendants directly

target unlawful business activities toward consumers in Illinois, cause harm to Plaintiff's business within this judicial district, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using their commercial, interactive internet stores to sell and/or offer for sale unlicensed Warren Photographic Products in connection with Plaintiff's copyright.

Defendants' ongoing unlawful activities should be restrained, and the Court should issue a Preliminary Injunction Order. Specifically, Plaintiff seeks an order: (1) restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of pirated Warren Photographic Products; and (2) restraining Defendants' assets to preserve Plaintiff's right to an equitable accounting. Ancillary to and as part of the Preliminary Injunction, Plaintiff respectfully requests that this Court (3) authorize notifying Defendants of the proceedings by electronic mail and/or electronic publication. Plaintiff does not seek authorization to effectuate service by electronic means in this motion. Plaintiff reserves the request for alternative service in a separate motion supported by the specific, defendant-by-defendant, address-diligence showing required by *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 793, 799, 801–02 (7th Cir. 2026).

Indeed, considering the covert nature of offshore infringing activities and the vital need to establish an economic disincentive for infringement, courts regularly issue such orders. *See, e.g., Jodicke v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 24-cv-07859, Dkt. 27 (N.D. Ill. Oct. 1, 2024); *Diachenko v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 24-cv-05936, Dkt. 27 (N.D. Ill. Aug. 12, 2024); *see also In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (recognizing that an *ex parte* temporary restraining order "is indispensable

to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief" (citation omitted)).

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations establish that issuing a Preliminary Injunction Order against Defendants is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits. Plaintiff is the owner of a valid copyright registration, and Defendants sold and offered to sell pirated products that infringed the Warren Photographic copyrighted work. In addition, Defendants have irreparably harmed, and continue to irreparably harm, Plaintiff through diminished goodwill, damage to Plaintiff's reputation, and loss of control over the licensing of the Warren Photographic Work. Monetary damages cannot adequately remedy these harms. This makes injunctive relief particularly appropriate in this matter.

Issuance of an injunction is also in the public interest because it will prevent unknowing consumers from being deceived into purchasing pirated Warren Photographic Products. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 17 U.S.C. § 504(b), which the Amended Complaint expressly demands.

Finally, an order authorizing notice by email and/or electronic publication is proper as a result of Defendants' intentional efforts to conceal their identities and operate their business online. Under these circumstances, email and electronic publication are the most efficient and reliable methods for notifying them of this motion and future proceedings and providing them the opportunity to defend and present their objections.

## II. STATEMENT OF FACTS

### A. Plaintiff's Copyright and Products

Warren Photographic is a family-run photography company specializing in high-quality commercial imagery, particularly of animals. *See* Declaration of Mark Taylor (the "Taylor Declaration") ¶ 3. Plaintiff first published the Warren Photographic Work in 2014, long before Defendants' acts described herein. *Id.* Ex. 1. Plaintiff is the owner of U.S. Copyright Registration No. VA 2-476-620 (the "Warren Photographic Work"). *Id.* ¶ 5. A true and correct copy of the federal copyright registration certificate for the Warren Photographic Work is attached to the Taylor Declaration as **Exhibit 1**. *Id.* Also, substantial time, money, and other resources have been expended in developing, advertising, and otherwise promoting the Warren Photographic Work. *Id.* ¶ 7. Thus, consumers, the public, and the trade widely recognize the Warren Photographic Work and associate it exclusively with Plaintiff. *Id.*

### B. Defendants' Unlawful Activities

The success of the Warren Photographic Work has resulted in significant infringement of the copyright. *Id.* ¶ 8. Numerous internet stores, including the Defendant Internet Stores, have been identified and linked to numerous marketplace listings, which were offering for sale, selling, and importing unauthorized Warren Photographic Products to consumers in this judicial district and throughout the United States. *Id.*

#### i. Defendants Operate Legitimate-Looking Internet Stores

Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Warren Photographic Products. Declaration of Keith A. Vogt ("Vogt Declaration") ¶ 3. Plaintiff has not licensed or authorized Defendants to use Plaintiff's

Warren Photographic Work, and none of the Defendants is an authorized retailer of genuine Warren Photographic Products. *See* Taylor Declaration ¶ 9.

ii. Defendants Use Fictitious Aliases and Common Tactics to Evade Take Down

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. Vogt Declaration ¶ 4. Upon information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. *Id.* Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their illegal operation and to avoid being shut down. *Id.*

There are similarities among the Defendant Internet Stores. *Id.* ¶ 5. For example, many of the Defendant websites have similar layouts, even though different aliases were used to register the respective internet stores. *Id.* In addition, pirated Warren Photographic Products for sale in the Defendant Internet Stores bear similar indicia of being reproductions of one another, suggesting that the pirated Warren Photographic Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. *Id.*

Further, infringers such as Defendants typically operate multiple accounts behind layers of payment gateways so that they can continue operation. *Id.* ¶ 6. Upon information and belief, Defendants maintain offshore bank accounts and regularly move funds from their accounts to offshore bank accounts outside the jurisdiction of this Court. *Id.*

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the pirated Warren Photographic Products for sale thereon, and

common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of infringers. Upon information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with unauthorized versions of the Warren Photographic Work in the same transaction, occurrence, or series of transactions or occurrences. As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their pirating operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' pirating network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to further amend its pleadings.

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the Warren Photographic Work. To stop Defendants' sale of Infringing Warren Photographic Products, Plaintiff respectfully requests that this Court issue a Preliminary Injunction Order. Without the relief requested by Plaintiff's instant Motion, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(a)(1) of the Federal Rules of Civil Procedure provides that the Court may issue a preliminary injunction order only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with the Warren Photographic Work via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving

consumers into believing that the pirated Warren Photographic Products for sale on Defendants' websites are owned, sponsored, or endorsed by Plaintiff. The entry of a preliminary injunction order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the Warren Photographic Work.

In the absence of a preliminary injunction, the Defendants can and likely will modify registration data and content, redirect traffic to other websites and/or marketplace accounts in their control, and move any assets from U.S.-based accounts, including Amazon, Walmart, or similar accounts. Courts have recognized that civil actions against infringers present special challenges that justify proceeding on even an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested preliminary injunction order. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. §§ 1338(a)–(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### A. This Court May Exercise Personal Jurisdiction Over Defendants

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, by directly offering for sale products into this judicial district as well as through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can and do purchase products replicating the Warren Photographic Work without authorization. Indeed, each Defendant Internet Store accepted a test purchase of an accused product for shipment to Chicago, Illinois. Vogt Declaration ¶ 8 &

Ex. 1. Each Defendant has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, and have offered to sell, have sold, and continue to sell infringing Warren Photographic Products to consumers within the United States, including the State of Illinois. *See id.*; Am. Compl. [22] ¶¶ 2, 16. Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true, and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 423 (7th Cir. 2010); *see also Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Illinois courts regularly exercise personal jurisdiction over websites using intellectual property without authorization in connection with the offering for sale and selling of infringing merchandise to Illinois residents over the internet. 735 Ill. Comp. Stat. 5/2-209(a)(2). Recently, the Seventh Circuit concluded that personal jurisdiction is proper when a defendant purposefully directs its actions to Illinois via third-party online retailers, such as Amazon.com. *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022) ("[Defendant's] actions certainly can be characterized as purposeful. It established an online store, using a third-party retailer, Amazon.com. Through this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so."); *see also Curry v. Revolution Labs., LLC*, 949 F.3d 385, 399 (7th Cir. 2020); *Tommy Hilfiger Licensing LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 1:20-cv-07477, Dkt. 46 (N.D. Ill. Mar. 24, 2021); *Mori Lee v. Liu*, No. 19-cv-07555, Dkt. 60 (N.D. Ill. May 14, 2020); *Christian Dior Couture, S.A. v. Liu*, 2015

U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015); *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897 (N.D. Ill. 2015).

**B. Standard for Preliminary Injunction**

A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If the Court is satisfied that these conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.*

The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms needs to favor the plaintiff's position. *Ty, Inc.*, 237 F.3d at 895. The sliding scale approach is not mathematical in nature; rather, "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895–96. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

**C. Plaintiff Will Likely Succeed on the Merits**

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright and (2) copying of constituent elements of the work

that are original. *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization . . ., or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Here, Plaintiff owns the registered copyright for the Warren Photographic Work. Taylor Declaration ¶ 5. The accused products use the protected work or are derived from the distinctive creative content found in the Warren Photographic Work. As such, the infringement is clear and establishes that Plaintiff is likely to succeed on the merits of this claim.

### D. There is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to . . . infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988) (quoting *Processed Plastic Co. v. Warner Commc'ns, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982)).

The harms caused by the infringement of the Warren Photographic Work are equally insidious. The infringements deprive Plaintiff of the ability to control the creative content protected by the copyright; they devalue the Warren Photographic Work by associating it with inferior quality goods, and they undermine the value of the copyright by creating the impression that infringement may be undertaken with impunity, which threatens Plaintiff's ability to develop further artwork and markets for the existing work. Taylor Declaration ¶¶ 10–15. Warren

Photographic's images have been featured in books, magazines, stamp sets, greeting cards, calendars, commercial merchandise, and pet food packaging. *Id.* ¶ 3. Plaintiff controls the quality of the products that carry its images and invests in developing, advertising, licensing, and promoting the Warren Photographic Work. *Id.* ¶¶ 6–7. Defendants put the Warren Photographic Work on the same kind of merchandise: jigsaw puzzles, tin signs, and posters. Vogt Declaration Ex. 1. Every unlicensed sale therefore displaces a licensing opportunity Plaintiff cannot recapture and whose value cannot be reliably measured. *See* Taylor Declaration ¶¶ 10, 13.

These are recognized irreparable harms for which monetary compensation is inadequate. To begin, Plaintiff's losses resist measurement. Harm is irreparable where "a loss is difficult to replace or difficult to measure," and in copyright cases "to prove the loss of sales due to infringement is . . . notoriously difficult." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (citation omitted). The Seventh Circuit agrees: "[I]t is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'" *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (citation omitted). The licensing opportunities Defendants displace are exactly that kind of loss. The injury to Plaintiff's reputation is no easier to price. A consumer "exposed to poorly rendered or otherwise subpar versions" of a plaintiff's artwork "may attribute the quality to [the plaintiff] itself," and "[t]hat loss cannot easily be quantified." *GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 854 (N.D. Ill. 2019). Courts in this District have therefore found irreparable harm where a copyright holder faces "potential harm to goodwill, reputation, brand confidence, . . . and relinquished control of nature and quality of germane products in connection with their copyright." *Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 21 C 3289, 2022 WL 17176498, at *3 (N.D. Ill. Nov. 23, 2022).

The harm is also continuing, and no judgment would repair it. So long as Defendants' listings remain online or can be restored, the Warren Photographic Work stays in front of consumers in a form Plaintiff never approved. The "continued online accessibility" of infringing works itself weighs in favor of injunctive relief. *GC2*, 391 F. Supp. 3d at 854. Unchecked infringement also signals that the work may be copied with impunity, which undermines Plaintiff's ability to license the work and to enforce its exclusive rights. *See Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1013–14 (C.D. Cal. 2011); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007). Finally, even a measurable loss could not be recovered. Defendants are anonymous foreign sellers who move their proceeds offshore. Vogt Declaration ¶¶ 4, 6. Where "it is not practicable to calculate damages" and the defendants "have no significant assets in the United States," a plaintiff has no adequate remedy at law. *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304–05 (7th Cir. 2003); *see also Grokster*, 518 F. Supp. 2d at 1219 (holding that the defendant's "likely inability to pay" for past and future infringements independently established irreparable harm). Accordingly, Plaintiff has established that it will be irreparably harmed by Defendants' infringing conduct.

### E. The Balancing of Harms Tips in Plaintiff's Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587–88

(D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). This is equally true in the copyright context, since Defendants "cannot complain" of being forced to cease their infringement. *WTV Sys.*, 824 F. Supp. 2d at 1014–15 (citation omitted).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Warren Photographic Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

**F. Issuance of the Injunction is in the Public Interest**

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983). This is especially true here since protecting the creative content of the Warren Photographic Work extends far beyond protecting the work of the producing studio. It also protects the integrity of Warren Photographic Products and encourages creative expression.

Moreover, federal courts have long held that "the trademark laws . . . are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). This is equally true in the copyright context. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of copyright used in connection with those goods.

Unless Defendants' unauthorized use of the Warren Photographic Work is enjoined, the public will continue to be confused and misled by Defendants' conduct.

Granting Plaintiff's Renewed Motion for Entry of a Preliminary Injunction Order therefore serves the public interest.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

Rule 65(a)(1) of the Federal Rules of Civil Procedure provides that a court may issue a preliminary injunction order only on notice. Here, Plaintiff will provide Defendants notice of this action and of its renewed request for preliminary injunctive relief by email. Vogt Declaration ¶ 9. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. The facts in this case warrant such relief.

### A. A Preliminary Injunction Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Work is Appropriate

Plaintiff requests an injunction requiring the Defendants to immediately cease all use of the Warren Photographic Work on or in connection with all Defendant Internet Stores and to cease their acts of copyright infringement. Such relief is necessary to stop the ongoing harm to the copyright, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Warren Photographic Work. The need for injunctive relief is magnified in today's global economy where infringers can operate over the internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute pirated Warren Photographic Products.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of intellectual property. *See, e.g., Jodicke*, No. 24-cv-07859, Dkt. 27; *Diachenko*, No. 24-cv-05936, Dkt. 27.

**B. Preventing the Fraudulent Transfer of Assets is Appropriate**

Plaintiff requests a restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits pursuant to 17 U.S.C. § 504(b) is preserved. Issuing a restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets offshore, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless. Vogt Declaration ¶¶ 4, 6. Preventing that kind of transfer is the core function of a prejudgment restraint. *See SEC v. Lauer*, 52 F.3d 667, 671 (7th Cir. 1995) (affirming preliminary injunction that was "essential to prevent the dissipation of assets"); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (a request for equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief"); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1526–27 (S.D. Cal. 1990) (freezing the assets of counterfeiters operating internationally because "there is a likelihood that defendants would transfer and hide assets in order to avoid a judgment" and, "unless the assets are frozen, defendants may hide their allegedly ill-gotten funds"), *aff'd*, 970 F.2d 552, 563 (9th Cir. 1992). The Amended Complaint expressly seeks that accounting and the disgorgement of Defendants' profits. *See* Am. Compl. [22] ¶¶ 7, 21 & Prayer for Relief ¶ 3.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss*, 51 F.3d at 987; *Reebok*, 970 F.2d at 559.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in an IP infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, No. 03 C 4844, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940))). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.; see Animale*, 256 F. App'x at 709; *Levi Strauss*, 51 F.3d at 987; *Reebok*, 970 F.2d at 559; *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question here were profits the [defendants] made by unlawfully stealing [the plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of the case."). This Court has entered asset restraints in similar cases. *See, e.g.*, *Diachenko*, No. 24-cv-05936, Dkts. 17–18 (N.D. Ill. July 16, 2024) (granting temporary restraining order that included a temporary asset restraint); *id.*, Dkts. 26–27 (N.D. Ill. Aug. 12, 2024) (granting preliminary injunction); *Jodicke*, No. 24-cv-07859, Dkt. 27.

Because an accounting and disgorgement of profits is equitable, the restraint falls within the authority *Grupo Mexicano* expressly preserved. *Grupo Mexicano*, 527 U.S. at 324–25. Courts in this District apply that exception to the Copyright Act's profits remedy. *Banister v. Firestone*,

No. 17 C 8940, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018) ("The Copyright Act expressly authorizes this equitable remedy, 17 U.S.C. § 504(b), and the Court can permissibly freeze assets to protect a plaintiff's equitable remedies."). The scope of the restraint also follows from the statute. In establishing an infringer's profits, "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). "Where there is a commingling of gains, [the infringer] must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 406 (1940).

The Seventh Circuit recently enforced the same rule under the Lanham Act's parallel profits provision, reversing a district court that refused to treat e-commerce counterfeiters' revenue as profits: "A trademark plaintiff need not disentangle revenue and profits. This rule may well result in a windfall to the trademark holder, but that is a price worth paying." *Dyson Tech. Ltd. v. David 7 Store*, 132 F.4th 526, 529 (7th Cir. 2025) (citing *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 207 (1942), for the principle that "to hold otherwise would give the windfall to the wrongdoer").

The same logic controls here. Defendants alone hold the records that could separate infringing revenue from anything else in their accounts, and until they produce them, the doubt is resolved against the infringer, not the copyright owner. The funds at issue sit in the same Amazon and Walmart accounts Defendants used to offer and sell the accused products and to collect the proceeds of those sales. *See* Vogt Declaration ¶¶ 7–8 & Ex. 1. Those balances are the presumptive measure of the profits Plaintiff may recover, and they should remain restrained in full until a Defendant proves otherwise. If a Defendant later contends that its restrained funds include

anything other than infringing proceeds, the burden will be on that Defendant "to present documentary proof that particular assets [are] not the proceeds of [infringing] activities"—that is, "to come up with something that shows the Court that the universe of potential [infringing] profits is less than what is currently frozen." *Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, No. 20-cv-3471, 2020 WL 8260381, at *2, *5 (N.D. Ill. July 20, 2020) (quoting *Monster Energy*, 136 F. Supp. 3d at 910).

Each requirement for the restraint is met. Plaintiff seeks an equitable accounting and disgorgement of Defendants' profits under 17 U.S.C. § 504(b), which places the restraint within the authority *Grupo Mexicano* preserved. The funds to be restrained are held in the same marketplace accounts Defendants used to collect the proceeds of their sales of the accused products, which makes those balances the presumptive measure of the profits subject to that accounting. *See* Vogt Declaration ¶ 8 & Ex. 1. And Defendants are anonymous foreign sellers who operate behind layers of payment accounts and move their proceeds offshore, Vogt Declaration ¶¶ 4, 6, so that without a restraint there will be nothing left to account for. The Court should restrain the funds in Defendants' accounts in full, leaving each Defendant free to show, with documentary proof, that the universe of its infringing profits is less than the amount restrained.

## V. DEFENDANTS RECEIVED NOTICE OF THIS CASE AND THE PRELIMINARY INJUNCTION VIA E-MAIL

Pursuant to this Court's Order [16], which authorized expedited discovery, Plaintiff obtained Defendants' email addresses from payment processors and marketplace platforms with whom Defendants actively transact business. Plaintiff will send this renewed motion, the Amended Complaint, and all supporting papers to Defendants at those email addresses. Vogt Declaration ¶ 9.

Fed. R. Civ. P. 65 permits the issuance of a preliminary injunction "only on notice." Fed. R. Civ. P. 65(a). However, "[s]ervice of process is not required to notify a party of a decree or injunction." Fed. R. Civ. P. 4.1 advisory committee's note to 1993 amendment. The Seventh Circuit has confirmed that a preliminary injunction may be issued without formal service of process. *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012). The Seventh Circuit has found that notice via email is sufficient even in the contempt context. *Teledyne Techs. Inc. v. Shekar, 739 F. App'x* 347, 349 (7th Cir. 2018). Email notice is equally sufficient here, where Defendants operate exclusively online, and the email addresses were obtained through court-authorized discovery from financial institutions with which Defendants actively transact.

Email notification provides Defendants with actual notice and a full opportunity to oppose this motion. The email addresses were obtained from payment processors with whom Defendants actively transact business, ensuring the addresses are monitored and operational. Defendants' entire business model depends on electronic communication: they receive orders, process payments, and communicate with customers exclusively online. Email notice thus reaches Defendants through the very channel they have selected as their primary means of conducting business. This satisfies the due process requirement that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

This Court and others in this District regularly authorize email notification in similar copyright infringement actions against defendants operating online stores. *See, e.g., Jodicke*, No. 24-cv-07859, Dkt. 27; *Diachenko*, No. 24-cv-05936, Dkt. 27.

## VI. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Thirty Thousand U.S. Dollars ($30,000), or $1,000 per Defendant. *See, e.g.*, *Monster Energy*, 136 F. Supp. 3d at 910–11.

## VII. CONCLUSION

The Warren Photographic Work is an important part of Plaintiff's business. That the accused products use the creative content protected by Plaintiff's copyright is no coincidence. It is validation that consumers value these rights owned by Plaintiff. Without entry of the requested relief, the sale of infringing products will continue unabated. Therefore, entry of a preliminary injunction order is necessary to protect Plaintiff's rights and to prevent further harm to Plaintiff and the consuming public. Plaintiff respectfully requests that this Court enter the Preliminary Injunction Order submitted herewith, including a restraint of Defendants' assets sufficient to preserve an equitable accounting of their profits.

DATED: November 10, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*

Keith A. Vogt
FL Bar No. 1036084/IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website, and I will send an e-mail to any e-mail addresses provided for Defendants by third parties that includes a link to said website.

*/s/ Keith A. Vogt*
Keith A. Vogt, Esq.